UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————
LOCAL ONE SECURITY OFFICERS
UNION,
                         Plaintiff,

           -v-

NEW YORK UNIVERSITY,
                        Defendant.
————————————————————————

19-CV-3143 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      In December 2018, a member of Plaintiff Local One Security Officers Union ("Local One"), Richard Berger, filed a lawsuit in New York state court (the "*Berger* Action") against his employer, Defendant New York University ("NYU"), alleging that certain of NYU's labor practices violated state law. *Berger v. New York Univ.*, No. 19 Civ. 267 (S.D.N.Y.) ("*Berger*"). NYU took the view that the *Berger* Action breached a collective-bargaining agreement ("CBA") between NYU and Local One, and it filed a grievance and Demand for Arbitration against Local One pursuant to the CBA's dispute-resolution process. (Dkt. Nos. 8-5, 8-7.) Local One responded by filing this action, which seeks to enjoin NYU from proceeding with the arbitration it has initiated. (Dkt. No. 1 ¶¶ 19–25.) Now before the Court is Local One's motion for a preliminary injunction. (Dkt. No. 13.) For the reasons that follow, the motion is denied.

**I.    Background**

      Richard Berger, an NYU security guard and a member of Local One, filed a class action complaint against NYU in New York state court on December 11, 2018.[1] (Dkt. No. 8-6.) The

---

[1] NYU removed the *Berger* Action to this Court on January 9, 2019. (*Berger*, Dkt. No. 1.) This Court, however, has concluded that removal was improper and has remanded the *Berger* Action back to state court. (*Berger*, Dkt. No. 30.)

complaint in the *Berger* Action alleges that NYU has "a policy and practice of requiring" its security guards "to regularly work over forty (40) hours in a week without paying them all earned overtime wages." (Dkt. No. 8-6 ¶ 2; *see also id.* ¶ 4.) More specifically, Berger has alleged that NYU does not pay its guards for some of the time they spend before and after each shift changing into and out of their uniforms and traveling to and from their assigned posts. (Dkt. No. 8-6 ¶¶ 16–18.) By failing to pay its employees for this supposedly "compensable work time" (Dkt. No. 8-6 ¶ 19), including by failing to pay overtime where due, NYU has, according to Berger, violated New York state labor law (Dkt. No. 8-6 ¶¶ 20–33).

On February 15, 2019, NYU responded to the *Berger* Action by filing a grievance against Berger and Local One pursuant to the dispute-resolution process set out in its CBA with Local One. (Dkt. No. 8-5.) The grievance maintained that the *Berger* Action represents a "material breach of the CBA" (Dkt. No. 8-5 at 1) because it violates the CBA's requirement that disputes over "the meaning, application, or operation of any provision of th[e] [CBA]" be resolved via the CBA's exclusive grievance and arbitration process (Dkt. No. 8-1 at 10–11). In any event, NYU contended in the grievance, Berger's claims have no merit because NYU has been paying its guards "in accordance with the terms and conditions of the CBA," as informed by the parties' "mutual understanding and longstanding historical agreements as to what is, and is not, compensable time under the terms of the CBA." (Dkt. No. 8-5 at 1.) As a remedy, NYU sought, among other things, dismissal of the *Berger* Action and an affirmation from Local One that "none of the purported 'working time' claimed by Berger is compensable under the CBA." (Dkt. No. 8-5 at 2.)

Local One rejected the grievance on February 25, 2019. (Dkt. No. 14 at 15–16.) According to Local One, the *Berger* Action seeks to enforce "statutory rights under various New

York State wage and hour statutes" and therefore does not "seek to enforce, raise nor . . . involve the interpretation of any term or condition set forth in the [CBA]." (Dkt. No. 14 at 15.) Local One thus took the view that the claims asserted in the *Berger* Action are not covered by the CBA's grievance and arbitration provisions and that NYU's grievance, predicated as it was on the view that the *Berger* Action breached those provisions, was baseless. (Dkt. No. 14 at 16.)

Unpersuaded, NYU filed a demand for arbitration against Local One with the American Arbitration Association on March 6, 2019. (Dkt. No. 8-7.) On April 9, 2019, Local One responded by filing a complaint for injunctive relief in this Court and moving for a preliminary injunction that would bar the arbitration from moving forward during the pendency of this suit.[2] (Dkt. Nos. 1, 13.) The parties have now briefed Local One's motion for a preliminary injunction (Dkt. Nos. 6, 15–16), and this Court held an evidentiary hearing and oral argument on the motion on May 8, 2019 (Dkt. No. 18). Having considered the parties' submissions, the Court is now prepared to rule on Local One's motion for a preliminary injunction.

## II.     Legal Standard

Preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction bears the burden of demonstrating "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

---

[2] On the same day that it filed its complaint, Local One sought an order directing NYU to show cause why this Court should not enter a temporary restraining order pending a ruling on the preliminary injunction motion. (*See* Dkt. No. 10 at 4:12–16.) The Court held a hearing on Local One's request for a temporary restraining order, but Local One withdrew that request after NYU agreed to suspend arbitral proceedings pending this Court's decision on the preliminary injunction motion. (Dkt. No. 10 at 18:13–19:6.)

requesting the preliminary relief." *Citigroup Glob. Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)).  In addition, "the moving party must show that a preliminary injunction is in the public interest." *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011).

## III.   Discussion

The Court begins its analysis by considering whether Local One, in seeking a preliminary injunction, has demonstrated that it is likely to succeed on its claim that the parties' dispute is not subject to arbitration, or whether Local One has at least raised serious questions on that score.[3]

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a written agreement to arbitrate a dispute arising out of a commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," *id.* § 2.  Local One never argues that any portion of the CBA or its dispute-resolution provision is invalid or otherwise revocable.  Instead, it contends only that the parties have not entered into an arbitration agreement that covers the present dispute in the first place.  (Dkt. No. 15 at 12–22.)

The agreement to waive a judicial forum in favor of arbitration is "a matter of contract," and it is fundamental that "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed to submit." *Halsey Drug Co. v. Drug, Chem., Cosmetic, Plastics & Affiliated Indus. Warehouse Emps.*, 192 F. Supp. 2d 192, 196 (S.D.N.Y. 2002) (quoting *Nat'l*

---

[3] Because Local One essentially claims that NYU has breached a "contract[] between an employer and a labor organization representing employees in an industry affecting commerce" by improperly invoking the CBA's grievance and arbitration procedure, this Court has subject-matter jurisdiction over the present action. 29 U.S.C. § 185(a); *see also Lemle & Wolff, Inc. v. Serv. Emps. Int'l Union, Local 32 E*, No. 93 Civ. 5431, 1994 WL 116031, at *1 (S.D.N.Y. Mar. 28, 1994) (taking federal jurisdiction over a suit to enjoin an arbitration initiated under a CBA).

*Cleaning Contractors, Inc. v. Local 32B-32J, Serv. Emps. Int'l Union*, 833 F. Supp. 420, 424 (S.D.N.Y. 1993)). The Second Circuit has accordingly recognized that a court has authority to enjoin arbitration of a claim where the parties "have not consented to arbitrate [that] claim." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011). To assess whether the parties have so consented, courts in this Circuit typically employ a two-step analysis, asking first "whether the parties agreed to arbitrate disputes at all," and second, "whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002). Absent "an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator," these threshold questions of arbitrability are typically "issue[s] for judicial determination." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (second quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)).

The CBA at issue here describes a mandatory grievance and arbitration procedure that applies, as relevant, to "any labor dispute or difference between . . . [NYU] and [Local One] as to the meaning, application, or operation of any provision of [the CBA]." (Dkt. No. 8-1 at 10–11.) Given that the CBA clearly reflects the parties' agreement to arbitrate *some* disputes, the critical question is whether the arbitration NYU has initiated pertains to a dispute that falls within the scope of that agreement. NYU maintains that it initiated the arbitration at issue to settle a dispute over the meaning, application, or operation of the CBA's wage and hour provisions and to seek a declaration "affirming NYU's compliance with" those provisions. (Dkt. No. 6 at 1.) But Local One counters that NYU stands accused of having violated only state statutory law—and not the

5

CBA—and that, in seeking an advisory opinion as to its compliance with the CBA, NYU seeks to arbitrate a matter that is not a "labor dispute or difference" at all.[4]  (Dkt. No. 16 at 3–9.)

The Court, however, need not decide whether NYU's unilateral quest for assurances as to its compliance with the CBA represents a "labor dispute or difference" within the meaning of the CBA's dispute-resolution provisions.  Given that the parties disagree over what constitutes an arbitrable matter under the CBA, and that addressing the parties' disagreement will necessarily entail the resolution of some "difference between . . . [NYU] and [Local One] as to the meaning, application, or operation" of a CBA provision (Dkt. No. 8-1 at 10–11), Local One and NYU have clearly and unmistakably assigned to the arbitrator the question of whether NYU's claims set out an arbitrable dispute.  *See Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 127 (2d Cir. 2006) (holding that a contract that empowered arbitrators "to interpret and determine the applicability of all [its] provisions" clearly and unmistakably required the parties to arbitrate the question of whether their dispute fell within the scope of the matters the contract defined as arbitrable); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121–22 (2d Cir. 2003) (holding that an agreement to arbitrate "all disputes . . . concerning or arising under," *id.* at 121, a contract clearly and unmistakably assigned the question of arbitrability to the arbitrator).[5]

---

[4] Local One also maintains that the CBA does not evince an agreement to arbitrate the statutory New York labor law claims asserted in the *Berger* Action.  (Dkt. No. 15 at 12–18.)  Because NYU has disclaimed the intention to address "any statutory claims whatsoever" in the challenged arbitration (Dkt. No. 6 at 1), the Court has no need to address this argument.

[5] These cases applied New York's law of contractual interpretation rather than the federal law that governs the interpretation of a CBA.  *See Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 Civ. 6049, 2009 WL 5171736, at *5 (S.D.N.Y. Dec. 30, 2009) ("[O]nly the federal law fashioned by the courts . . . governs the interpretation and application of collective-bargaining agreements." (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990))).  However, the parties have identified no relevant differences between New York and federal law in this area.  And in any event, on "the issue of who determines arbitrability," the Second Circuit has suggested that "federal and New York law are the same."  *Shaw*, 322 F.3d at 121.

Local One never offers a plausible contrary reading of the CBA. Instead, it merely points out that the CBA "does not explicitly require the arbitration of arbitrability." (Dkt. No. 16 at 3.) But "an express contractual commitment of the issue of arbitrability to arbitration" is not needed if a contract provides "such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" *Shaw*, 322 F.3d at 121 (alteration in original) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d Cir. 1996)). And although Local One maintains that the CBA places a meaningful limitation on the scope of arbitrable disputes by requiring that they be "'labor' disputes which involve the 'meaning, application, or operation' of the CBA" (Dkt. No. 16 at 3), the Court is unpersuaded. Even if the term "labor dispute," viewed in isolation, might not encompass a dispute over whether a given claim is arbitrable under the CBA, the CBA also requires the arbitration of "*any* . . . difference" between the parties as to the meaning or application of "*any*" of its provisions. (Dkt. No. 8-1 at 10–11 (emphases added).) That requirement clearly and unmistakably applies to disagreements as to which disputes are subject to the CBA's mandatory grievance and arbitration procedure and which are not. *See PaineWebber*, 81 F.3d at 1199 ("The words 'any and all' are elastic enough to encompass disputes over whether . . . a claim is within the scope of arbitration.").

Ultimately, then, because the CBA in this case reflects the parties' agreement to have an arbitrator decide in the first instance what constitutes an arbitrable "labor dispute or difference" under the CBA, Local One has failed to demonstrate a likelihood of success on the merits of its claim that it is entitled to enjoin the challenged arbitration, or to demonstrate serious questions going to the merits of that claim. As a result, Local One likewise cannot show that it will suffer irreparable harm if the arbitration goes ahead. *See Pike Co., Inc. v. Tri-Krete Ltd.*, 349 F. Supp. 3d 265, 272 (W.D.N.Y. 2018) ("[N]o irreparable harm arises from arbitrating disputes that are

subject to arbitration."). Finally, Local One has offered the Court no reason to believe that the public interest would favor the entry of an injunction that bars the parties from following a dispute-resolution procedure that they themselves have negotiated as part of a CBA.

Having failed to carry its burden of establishing any of the preconditions to the entry of a preliminary injunction, then, Local One is not entitled to that extraordinary remedy.

**IV.    Conclusion**

For the foregoing reasons, Local One's motion for a preliminary injunction is DENIED. Within fourteen days of the date of this order, Local One is directed to file a letter indicating whether, in light of the reasoning set out in this Opinion and Order, there is any reason why this Court should not enter final judgment in favor of NYU and close this case.

SO ORDERED.

Dated: September 9, 2019
        New York, New York

                                            _____
                                                    J. PAUL OETKEN
                                            United States District Judge